993 F.2d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CENTEX-RODGERS CONSTRUCTION COMPANY, a Nevada Corporation,
Plaintiff-Appellant,
v.
WAKE COUNTY, a political subdivision of the State of North
Carolina, Defendant-Appellee,
and
Weeks Bell, Incorporated, a North Carolina Corporation;
National Union Fire Insurance Company of
Pittsburgh, Pa, a Pennsylvania
Corporation, Defendants.
 No. 92-1919.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 1, 1993
Decided: May 7, 1993
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, District Judge. (CA-91-477-5-BR)
 James E. Glass, James E. Glass Associates, Miami, Florida, for Appellant.
 Charles B. Robson, Jr., Patton, Boggs & Blow, Raleigh, North Carolina, for Appellee.
 David A. Raynes, Perry, Patrick, Farmer & Michaux, Raleigh, North Carolina, for Appellant.
 Judith K. Guibert, Patton, Boggs & Blow, Raleigh, North Carolina; Michael R. Ferrell, Wake County Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 REVERSED AND REMANDED.
 Before RUSSELL, NIEMEYER, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Centex-Rogers Construction Company appeals the district court's grant of summary judgment to Wake County on Centex-Rogers's claim for additional compensation under the parties' construction contract. Because we find that there are genuine issues of material fact, we reverse and remand the case for further proceedings.
 
 I.
 
 2
 Centex-Rogers and Wake County entered into a construction agreement (Contract) on August 15, 1988, whereby Centex-Rogers agreed to serve as a general contractor for the construction of the Wake County Public Safety Center in Raleigh, North Carolina. The Contract required the work to be performed in compliance with provisions contained in the Contract's General Conditions and in accordance with the specifications and directions of the County's architect/engineer (Architect). Several sections of the General Conditions are at issue in this appeal. Section 12.2 required Centex-Rogers to deliver in writing "notice of any event, action or non-action which may become the basis of a Claim ... within twenty-four (24) hours of the occurrence, or the beginning of the occurrence, of any such event, action or nonaction giving rise to the Claim," and required Centex-Rogers to file its claim for compensation within ten days of the notice. (J.A. at 208.) This section further provided that the "written notice is a condition precedent to the making of a Claim." (Id.) Section 8.4 provided: "A waiver on the part of the Owner of any breach of any part of the Contractor shall not be held to be a waiver of any other or subsequent breach." (J.A. at 205.) Section 26 required the parties to submit any dispute over compensation to non-binding arbitration prior to instituting suit.
 
 
 3
 Before the Center was completed, the parties discovered cracks in the interior grouted joints of the exterior precast concrete panels which had been constructed and installed by a subcontractor, Weeks Bell, Inc. On March 21, 1991, Al Spradley, an agent of the Architect, informed Centex-Rogers in writing that the cracking condition was unacceptable and ordered Centex-Rogers "to proceed immediately with the corrective rework," as referenced in an attached memorandum.[1] (J.A. at 255.) On March 25, 1991, the County's project manager faxed a second memorandum, again directing Centex-Rogers to fix the cracks.
 
 
 4
 On May 3, 1991, Centex-Rogers submitted notice that it intended to file a claim and that it was commencing the work necessary to repair the cracks under protest. Centex-Rogers attributed the delay in filing its notice until May to its investigation into the cause of the cracking and the uncertainty of whether the parties were faced with a problem of design or construction. In addition, Centex-Rogers alleges that it was involved in negotiations with the Architect and Weeks Bell regarding the cause of the problem, the substance of the corrective work, and whether the repair work would require the company to seek additional compensation. On May 30, 1991, while continuing with the repair work, Centex-Rogers submitted a claim outlining its expected costs for the work. The County denied the claim, citing Centex-Rogers's failure to comply with section 12.2. The County thereafter denied Centex-Rogers's Request for Arbitration of the claim on the same grounds.
 
 
 5
 Following receipt of the County's refusal to arbitrate, CentexRogers filed suit seeking additional compensation for the work performed to repair the cracks.[2] The County answered and filed a motion for summary judgment, arguing that Centex-Rogers's failure to comply with section 12.2 prohibited it from receiving any additional compensation. Centex-Rogers argued, however, that the County's history of not requiring strict compliance with section 12.2 constituted a waiver of its ability to rely upon that section in denying CentexRogers's claim. The district court, sitting in diversity jurisdiction, granted the County's motion for summary judgement and this appeal followed.
 
 II.
 
 6
 Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo, viewing all inferences in the light most favorable to Centex-Rogers as the non-moving party. Moore v. Winebrenner, 927 F.2d 1312, 1313 (4th Cir.), cert. denied, 112 S. Ct. 97 (1991).
 
 
 7
 The district court based its decision to grant summary judgment upon Centex-Rogers's failure strictly to comply with the Contract. In so holding, the court found that strict compliance with section 12.2 was a condition precedent to recovery under the Contract and that section 8.4 precluded a finding that the County's prior failures to require strict compliance with section 12.2 constituted a waiver of section 12.2. The court relied primarily upon Blankenship Construction Co. v. North Carolina State Highway Commission, 222 S.E.2d 452 (N.C. Ct. App.), cert. denied, 230 S.E.2d 765 (N.C. 1976).
 
 
 8
 The district court's reliance on Blankenship was misplaced. Blankenship did not address the issue of waiver and there is no allegation in that case that the parties had a course of conduct which was contrary to the requirements of their contract. Instead, the court in Blankenship found that strict compliance with the notice provision in the construction contract was necessary because of the State's "compelling need to be notified of a 'changed conditions' or 'extra work' problem and oversee the cost records for the work in question." Id. at 462. Also, the court was concerned that the "State should not be obligated to pay a claim for additional compensation unless it is given a reasonable opportunity to insure that the claim is based on accurate determinations of work and cost." Id.
 
 
 9
 Those concerns are not implicated in this case. The County had ample notice of the "changed conditions" and the "extra work" problem.[3] The County's architect ordered that the work be performed and sent Centex-Rogers a memorandum outlining the work to be done. Furthermore, prior to any work being performed on the cracks, CentexRogers and the Architect negotiated over the manner in which the defect would be repaired and subsequently sent the Architect price estimates for correcting the problem.[4] Thus, the County was not deprived of any right to oversee the work or to ensure the accuracy of the cost estimates during construction due to Centex-Rogers's failure to notify the County of its intent to file a claim in March.
 
 
 10
 Centex-Rogers points out that under North Carolina law, there are at least two doctrines that may allow for recovery here: waiver and quantum meruit. Under the waiver doctrine, "provisions of a written contract may be modified or waived by a subsequent parol agreement, or by conduct which naturally and justly leads the other party to believe the provisions of the contract are modified or waived." W.E. Garrison Grading Co. v. Piracci Constr. Co., 221 S.E.2d 512, 515 (N.C. Ct. App. 1975) (quoting J.R. Graham & Son, Inc. v. Randolph County Bd. of Educ., 212 S.E.2d 542, 544 (N.C. Ct. App.), cert. denied, 215 S.E.2d 623 (N.C. 1975)), cert. denied, 222 S.E.2d 695 (N.C. 1976). "Waiver may be found where in the course of dealing, one party has dispensed with certain conditions in its favor and the other party has acted without meeting those conditions on the theory that their performance is not required." United States ex rel. F.E. Robinson Co. v. Alpha-Continental, 273 F. Supp. 758, 778 (E.D.N.C. 1967), aff'd, 404 F.2d 343 (4th Cir. 1968), cert. denied, 395 U.S. 922 (1969).
 
 
 11
 In Robinson, the court found that a general subcontractor gave numerous oral change orders to its labor subcontractor and that the labor subcontractor complied with those orders without waiting for a written change order. Id. at 765. This course of dealing waived the contract provision requiring a written change order as a condi tion precedent to receiving compensation for additional work. Id. at 778. Similarly, in Triangle Air Conditioning, Inc. v. Caswell County Board of Education, 291 S.E.2d 808, 812 (N.C. Ct. App.), cert. denied, 294 S.E.2d 376 (N.C. 1982), the North Carolina Court of Appeals found that the County's past failure to abide by and require strict compliance with the change order and notice provisions of its construction contract entitled Triangle to a jury instruction on the defense of waiver.
 
 
 12
 We believe applying these cases to the facts alleged and supported by Centex-Rogers precludes the grant of summary judgment for the County. The record discloses numerous instances where the County did not require strict compliance with section 12.2.[5] This course of dealing could reasonably have led Centex-Rogers"to believe that strict compliance with Subsection 12.2 was not necessary." (J.A. at 301.) This is sufficient to create a genuine issue of material fact as to whether the County waived strict compliance with section 12.2.[6] Under the quantum meruit theory, contractors have recovered compensation for additional work even though the contractors had not satisfied the contractual requirements for payment. See, e.g., Jennings Glass Co. v. Brummer, 362 S.E.2d 578, 583 (N.C. Ct. App. 1987), cert. denied, 364 S.E.2d 921 (N.C. 1988); Ellis Jones, Inc. v. Western Waterproofing Co., 312 S.E.2d 215, 218 (N.C. Ct. App. 1984). These cases have based their decisions on the fact that the owner of the project ordered the contractor to perform the work, knew the work was being performed, and should have known the contractor would seek payment, yet did nothing to stop the work. Jennings, 362 S.E.2d at 583; Ellis Jones, 312 S.E.2d at 218.
 
 
 13
 As in Jennings and Ellis Jones, the County ordered Centex-Rogers to perform the work in question. The evidence that Centex-Rogers gave the County its notice of intent to file a claim prior to commencing the repair work gives rise to an inference that the County knew or should have known that the company intended to seek compensation for its work. Centex-Rogers further alleges that the County accepted the benefit of this work by not attempting to stop CentexRogers from performing the work after receiving the company's notice of intent to file a claim. Under such circumstances, there is a genuine issue of material fact as to whether Centex-Rogers should recover for some or all of its work and the district court's conclusion to the contrary must be reversed.
 
 III.
 
 14
 For the reasons discussed above, the district court's decision is reversed and this case is remanded for further proceedings consistent with this opinion.[7]
 
 REVERSED AND REMANDED
 
 
 [1]
 The parties dispute whether the work performed by Centex-Rogers was corrective work, which should be provided at no extra cost to the County, or whether the work was due to design defects and constitutes additional work for which Centex-Rogers is entitled to be compensated. This is a genuine issue of material fact which cannot be resolved on summary judgment on the facts contained in the record before us
 
 
 [2]
 Centex-Rogers also filed suit against Weeks Bell, Inc., alleging that, if the work performed to repair the cracks constituted corrective work for which the County is not required to compensate Centex-Rogers, then Weeks Bell is liable for the cost of the work due to its failure properly to construct and install the panels. The district court did not address this claim, but instead entered a final judgment pursuant to Federal Rule of Civil Procedure 54(b) only as to the claim against the County. CentexRogers's suit against Weeks Bell is being held in abeyance until this court decides the merits of this appeal
 
 
 [3]
 The record contains numerous references to communications between Centex-Rogers, the Architect, and Weeks Bell discussing the cause of the cracks and which party was responsible for the problem. Weeks Bell took the position that it performed the work in accordance with the Engineer's specification and any problem was the result of a design defect. The County, however, took the position that the cracking was caused by defective material and poor workmanship. The various letters between the parties discussing the problem clearly demonstrate that from the beginning the County was well aware of the problem and the fact that some repair work would be required
 
 
 [4]
 The record is unclear as to when Centex-Rogers sent the County its price estimates. The record references a purchase order sent to the subcontractor performing the repair work on April 29, 1991. In addition, the County was notified of some price estimate at least by May 30, 1991. On that date, Centex-Rogers sent the County its initial claim with an estimate of its anticipated costs. (Appellant's Brief at 7.) At that point the repair work had not been completed. In fact, the work continued on at least into August
 
 
 [5]
 The record contains several examples where the County paid claims for which the notice of intent to file a claim was given more than twentyfour hours after the County ordered Centex-Rogers to perform the work. Section 12.2 was not invoked to deny payment for any of these claims. For example:
 The Architect ordered Centex-Rogers to perform additional work on March 3, 1989. Centex-Rogers submitted its notice of intent to file a claim on March 6, 1989, and its actual claim on July 24, 1989.
 The Architect ordered Centex-Rogers to perform additional work on January 11, 1991. Centex-Rogers submitted its notice on March 9, 1991.
 The Architect ordered Centex-Rogers to perform additional work on May 29, 1991. Centex-Rogers submitted its notice of intent to file a claim on June 5, 1991, and its claim on August 7, 1991.
 The Architect ordered Centex-Rogers to perform additional work on June 14, 1991. Centex-Rogers submitted its notice of costs on August 7, 1991.
 The Architect ordered Centex-Rogers to perform additional work on February 28, 1991. Centex-Rogers submitted its notice of claim on March 6, 1991, and its claim on July 16, 1991. Each of these claims was paid by the County.
 
 
 [6]
 The County argues that section 8.4 prevents this court from finding that Wake County waived compliance in this case. We disagree. This provision, like any other provision in the contract, may be waived by a course of dealing between the parties. See J.R. Graham & Son, 212 S.E.2d at 545 (parties can modify or waive a contract requirement by parol agreement even though the contract requires all modifications to be in writing)
 
 
 [7]
 We note that section 26.1 of the General Conditions of the Contract required the parties to arbitrate any dispute arising out of the Contract or work performed thereunder. Furthermore, section 26.4 of the Contract provides that, unless otherwise agreed by the parties, prior arbitration of such claims is a condition precedent to filing suit under the Contract. Although the parties discuss this issue in their brief, the district court did not address it. Therefore, we decline to do so herein and the district court will have an opportunity to address it on remand